UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TIMOTHY J. LAHRMAN, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| VS. | ) CAUSE NO. 3:15-CV-26-RLM-CAN |
| | ) |
| ELKHART COUNTY SUPERIOR | ) |
| COURT NO. 2, ET AL., | ) |
| | ) |
| DEFENDANTS. | ) |

OPINION and ORDER

This matter is before the court on the motions to dismiss filed by defendants Elkhart County Superior Court No. 2, Indiana Appellate Court, Elkhart County Circuit Court, State of Indiana, Office of Indiana Attorney General, and Indiana Supreme Court Division of State Court Administration, defendants Green Tree Servicing, LLC and Federal National Mortgage Association, and defendant Ocwen Financial Corporation. Plaintiff Timothy Lahrman proceeds *pro se*,[1] and in the spirit of Lewis v. Faulkner, 689 F.2d 100 (7th Cir. 1982), the court informed him of his obligation to respond to the

---

[1] Mr. Lahrman asked the court to appoint a guardian ad litem and counsel to represent him in this cause. The court denied the request as duplicative because Mr. Lahrman told the court that he was represented by a state-appointed guardian. The court then asked the alleged state-appointed guardian whether he intended to appear on Mr. Lahrman's behalf in this suit. *See* FED. R. CIV. P. 17(c) (A representative, next friend, or guardian ad litem may sue on behalf of an incompetent person.). That person informed the court that he had been appointed Mr. Lahrman's guardian ad litem for the sole purpose of representing Mr. Lahrman's interests in a 1987 case in Allen Superior Court, and his appointment for that purpose concluded twenty-five years ago (although Mr. Lahrman has haunted him ever since). Without a state-appointed guardian (and with his motion for a guardian already denied), Mr. Lahrman proceeds *pro se*.

motions to dismiss. Mr. Lahrman hasn't responded, and the time to do so has passed.

I. BACKGROUND

Mr. Lahrman says that he resided at 3004 Garden Boulevard in Elkhart, Indiana for the past twenty-two years. The property is owned by his companion, Cynthia Damron, who has intervened in this suit. Mr. Lahrman claims Ms. Damron granted him an ownership interest in the property. In 2005, Ms. Damron obtained a loan from GMAC Mortgage Corporation that she secured with the property. Four years later, Ms. Damron defaulted on the mortgage loan. GMAC Mortgage filed a foreclosure lawsuit in Elkhart Superior Court No. 2 in May 2010.[2] Green Tree Servicing, LLC was later substituted for GMAC Mortgage as the plaintiff in that suit.

Mr. Lahrman sought to intervene in the foreclosure suit in May 2013. Around the same time, Ms. Damron removed the suit to federal court. In September, this court found no basis for removal and remanded the foreclosure suit to the Elkhart Superior Court No. 2. 3:13-CV-482-RLM-CAN; Green Tree Servicing, LLC v. Damron, No. 13-3832, 557 F. App'x 588, 589 (7th Cir. June 9, 2014). A few months later, Mr. Lahrman again moved to intervene in the suit.

---

[2] Ms. Damron secured a second loan with the property she owned located across the street at 2931 Garden Boulevard. According to the defendants, Ms. Damron defaulted on that loan as well, and the foreclosure proceedings related to 2931 Garden Boulevard ended with a foreclosure sale in 2012.

The Elkhart Superior Court No. 2 found that Mr. Lahrman lacked standing, and so denied his motion to intervene. Mr. Lahrman appealed the denial, but the Indiana Court of Appeals dismissed the appeal as untimely. In January 2014, Mr. Lahrman filed a lawsuit in Elkhart Circuit Court against Green Tree Servicing LLC, Ally Financial, Inc. d/b/a GMAC Mortgage, LLC, Federal National Mortgage Association (Fannie Mae), and Mortgage Electronic Registration Systems, Inc.[3] He alleged the defendants had committed many bad acts related to the loan and the foreclosure proceedings on the 3004 Garden Boulevard property. He later amended the complaint to add Green Tree's attorneys as defendants. The Elkhart Circuit Court dismissed the suit based on Mr. Lahrman's alleged lack of capacity and directed him to re-file the suit through his guardian. The defendants indicate that he hasn't done so. The foreclosure suit concluded in May 2014, when the Elkhart Superior Court No. 2 entered judgment against Ms. Damron.

Mr. Lahrman filed this suit in January 2015 and immediately asked the court to stop a sheriff's sale of the property scheduled for January 28; the court denied the motion for emergency relief. The court also denied a later motion for emergency relief that sought to stop the enforcement of a writ of assistance obtained by the purchaser of the property. In this suit, Mr. Lahrman asserts the state government defendants discriminated against him by denying him the

---

[3] Mr. Lahrman also filed several motions related to the foreclosure on the 3004 Garden Boulevard property in the United States Bankruptcy Court for the Southern District of New York.

opportunity to participate in services, programs, and activities because of his disability in violation of the Americans with Disabilities Act. He alleges that the remaining defendants' actions related to the loan and foreclosure proceedings on the 3004 Garden Boulevard property violated the Fair Housing Act and federal and state consumer protection laws. As to all defendants, Mr. Lahrman seeks to quiet title and alleges fraud upon the court/mortgage foreclosure fraud, mortgage servicing fraud, fraudulent inducement, tortious interference with the reasonable expectation of privacy and to the advantageous economic opportunity to build wealth through home ownership, and "nuisance *ad infactum.*" Finally, he accuses the Indiana Supreme Court Division of State Court Administration, the State of Indiana, the office of the Attorney General, and Fannie Mae of negligent hiring, training, supervision, and retention. The defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. They say the *Rooker-Feldman* doctrine bars Mr. Lahrman's claims, and that he doesn't have standing to pursue the claims. Alternatively, the defendants say dismissal is appropriate pursuant to Rule 8 for failure to make plain allegations (Ocwen) and pursuant to Rule 12(b)(6) for failure to state a claim due to lack of capacity (Green Tree) and judicial immunity (state government defendants). Because the court concludes that it doesn't have jurisdiction over the subject matter of Mr. Lahrman's claims, the defendants' requests for dismissal under other theories needn't be considered by the court. Cook v. Winfrey, 141 F.3d 322, 325 (7th Cir. 1998).

## II. Standard of Review

The court must first address the Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Winslow v. Walters, 815 F.2d 1114, 1116 (7th Cir. 1987). To evaluate jurisdiction, the court takes all well-pleaded facts alleged in the complaint to be true and draws all reasonable inferences in favor of the plaintiff. Ezekiel v. Michel, 66 F.3d 894, 897 (7th Cir. 1995). If necessary, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." Id. (*quoting* Capitol Leasing Co. v. F.D.I.C., 999 F.2d 188, 191 (7th Cir. 1993) (per curiam)).

Mindful of Mr. Lahrman's *pro se* status, the court reads his complaint liberally. Hudson v. McHugh, 148 F.3d 859, 864 (7th Cir. 1998). The court will "give a *pro se* plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable." Id. Nevertheless, the court is under "no obligation to act as counsel or paralegal to *pro se* litigants." Myles v. United States, 416 F.3d 551, 552-553 (7th Cir. 2005) (*quoting* Pliler v. Ford, 542 U.S. 225, 231 (2004)).

## III. Discussion

The defendants contend that all of Mr. Lahrman's claims arise from the state court foreclosure proceedings on the 3004 Garden Boulevard property.

Consequently, they argue this court lacks subject matter jurisdiction over the claims, which the state courts already decided. The *Rooker-Feldman* doctrine precludes the lower federal courts from reviewing state court decisions. Holt v. Lake Cnty. Bd. of Comm'rs, 408 F.3d 335, 336 (7th Cir. 2005) (*citing* Rooker v. Fid. Trust Co., 263 U.S. 413, 416 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983)). The doctrine typically applies when a state court proceeding concludes and the losing party "files suit in federal court complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." Id. (*citing* Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). Several of Mr. Lahrman's claims are de facto appeals of the state courts' decisions and are barred without additional inquiry.[4] First, the Elkhart Superior Court denied Mr. Lahrman's motion to intervene in the foreclosure proceedings on the 3004 Garden Boulevard property. Mr. Lahrman directly challenges this decision in his claim titled "Action to Quiet Title by Occupying Claimant."[5] Second, the Elkhart Circuit Court dismissed Mr. Lahrman's suit in which he challenged the foreclosure proceedings. Mr. Lahrman alleged common law fraud, breach of contract, violations of Indiana Code §§ 24-

---

[4] That neither the state government defendants nor Ocwen were parties in the foreclosure proceedings on the 3004 Garden Boulevard property or Mr. Lahrman's suit related to the foreclosure proceedings is irrelevant for the purpose of applying the *Rooker-Feldman* doctrine. Newman v. Indiana, 129 F.3d 937, 942 (7th Cir. 1997).

[5] The defendants also argue Mr. Lahrman doesn't have standing to bring suit challenging the foreclosure proceedings because he wasn't the mortgagor of the property and he didn't have an interest in the property. The court agrees that it likely also lacks jurisdiction over Mr. Lahrman's claims because he doesn't have standing.

5-0.5 *et seq.*, the Deceptive Consumer Sales Act, Unfair and Deceptive Mortgage Practices, Unfair and Deceptive Mortgage Servicing Practices, Unfair and Deceptive Debt Collection Practices, and Unfair and Deceptive Mortgage Foreclosure Practices, tortious interference, "nuisance *ad in factum*," and intentional infliction of emotional distress. Mr. Lahrman directly challenges the state court's dismissal by making the following identical allegations in this suit: fraud upon the court, mortgage servicing fraud, fraudulent inducement, tortious interference, and "nuisance *ad infactum.*" The Elkhart Circuit Court dismissed the suit for reasons related to Mr. Lahrman's capacity and so didn't consider the merits of the claims. But even assuming dismissal was inappropriate, this court can't review the state court's decision. Brokaw v. Weaver, 305 F.3d 660, 664 (7th Cir. 2002) ("[N]o matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment."). The court must dismiss the claims that are identical to the claims decided by the Elkhart Superior Court and the Elkhart Circuit Court.

In addition to direct challenges of state court decisions, the *Rooker-Feldman* doctrine "precludes federal jurisdiction over claims inextricably intertwined with a state court determination," id., if the plaintiff had a reasonable opportunity to raise the issue in state court proceedings. Id. at 668. The concept of "inextricably intertwined" claims has been described as metaphysical, Taylor v. Fed. Nat. Mortgage Ass'n, 374 F.3d 529, 533 (7th Cir. 2004), but the "pivotal

inquiry . . . is whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." Brokaw v. Weaver, 305 F.3d 660, 665 (7th Cir. 2002). Mr. Lahrman's claims related to the Fair Housing Act[6] and federal and state consumer protection laws[7] are allegations that overlap with Mr. Lahrman's previously raised common law fraud allegations. In fact, they are identical claims, simply stated differently. In addition to likely being directly barred, the claims are inextricably intertwined with the state courts' decisions.

Mr. Lahrman also alleges the state government defendants violated the Americans with Disabilities Act, which at first glance seems distinguishable from the state court decisions related to the foreclosure proceedings. Yet in the first two paragraphs of the Americans with Disabilities Act allegation, Mr. Lahrman argues that he had an absolute right to assert his property rights in the 3004 Garden Boulevard property, an absolute right to intervene in the programs, services, and activities in Elkhart Superior Court, and an absolute right to fair and equal access to the programs, services, and activities of the Elkhart Circuit Court, the Indiana Court of Appeals, and the Indiana Supreme Court Division of

---

[6] For example, paragraph 136 of the complaint alleges the defendants targeted and preyed upon Ms. Damron with a "scheme of discriminatory and fraudulent mortgage lending, mortgage servicing and mortgage foreclosure practices." (Compl. 62, Doc. No. 1).

[7] For example, paragraph 145 of the complaint alleges Mr. "Lahrman and his companion have been victims of the Defendants' unfair, deceptive, unscrupulous and fraudulent business practices namely the Defendants' mortgage servicing and mortgage foreclosure practices." (Compl. 65, Doc. No. 1).

State Court Administration. (Compl. 40-41, Doc. No. 1). He makes sweeping allegations about how the state government defendants didn't accommodate his disability, but in truth, Mr. Lahrman again seeks to challenge the denial of his intervention in the foreclosure suit and the dismissal of his suit challenging the foreclosure proceedings. Finally, Mr. Lahrman claims the state government defendants negligently hired, trained, supervised, and retained judges and Fannie Mae negligently hired, trained, supervised, and retained mortgage servicers. But like the ADA claims, Mr. Lahrman is simply disguising yet another challenge to the state courts' decisions. These claims are also inextricably intertwined with the state courts' decisions. *See* Holt v. Lake Cnty. Bd. of Comm'rs, 408 F.3d 335, 336 (7th Cir. 2005) ("[A] litigant may not attempt to circumvent the effect of *Rooker–Feldman* and seek a reversal of a state court judgment simply by casting the complaint in the form of a civil rights action."); Wright v. Tackett, 39 F.3d 155, 157-158 (7th Cir. 1994). Mr. Lahrman's continued assertions that he had an interest in the 3004 Garden Boulevard property and a right to intervene in the foreclosure proceedings show that his alleged injury was caused by the state courts' decisions that prevented him from challenging the foreclosure proceedings, and not an independent injury that would give this court jurisdiction.

Mr. Lahrman lost in state court and now seeks a ruling from a federal court about the same claims. He reiterated and restated his arguments in his many court filings related to the foreclosure proceedings on the 3004 Garden

Boulevard property, but at bottom, his grievance has always been, and remains, that he believes that he had an interest in the property and should have been involved in the foreclosure proceedings. He had ample opportunity to raise these claims in state court and he freely did so (albeit unsuccessfully). Mr. Lahrman's complaint consists of the arguments rejected by the Indiana courts, and this court lacks jurisdiction to review their decisions.

IV. CONCLUSION

For the foregoing reasons, the court GRANTS defendants' motions to dismiss (Doc. Nos. 31, 33, & 35) for lack of jurisdiction.

OTHER MOTIONS

Mr. Lahrman filed an objection and motion to disqualify the office of the Indiana Attorney General from representing the state government defendants in this case. He claims the Attorney General has a duty to protect him because he is under a state guardianship but has no duty to defend the state government defendants. Mr. Lahrman cites no case law, statutes, or rules of professional conduct to support his argument. Courts won't disqualify counsel unless disqualification is absolutely necessary. Morgan v. Calderone, No. 1:07-CV-763DFHJMS, 2008 WL 544681, at *2 (S.D. Ind. Feb. 28, 2008). Mr. Lahrman presented the court with nothing more than conjecture, so the court can find no

reason to disqualify the office of the Attorney General from representing the state government defendants. The motion to disqualify (Doc. No. 27) is DENIED.

In February 2015, the court deferred ruling on Mr. Lahrman's "Verified Motion/Petition for Emergency Preliminary Injunctive Relief With and/or Without Notice as an Emergency Temporary Restraining Order," to the extent he sought a preliminary injunction, until he filed a separate motion as required by Local Rule 65-1. Mr. Lahrman didn't file a separate motion, and the motion (Doc. No. 26) is now DENIED as moot.

The court also DENIES as moot Ms. Damron's "Notice to Join or Otherwise Intervene" (Doc. No. 23) to the extent the notice seeks the court's permission to intervene. The case is dismissed for lack of subject matter jurisdiction as to all plaintiffs.

SO ORDERED.

ENTERED: <u>August 13, 2015</u>

<u>   /s/ Robert L. Miller, Jr.   </u>
Judge
United States District Court
